Filed 7/2/21  P. v. Clavano CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074133 |
| v. | (Super.Ct.No. FVA017430) |
| AMANDO ZOSA CLAVANO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Reversed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, defendant and appellant Amando Zosa Clavano, was convicted of murder. (Pen. Code, § 187, subd. (a).)[1] The jury found true the allegations that (1) the murder was willful, deliberate, and premeditated (former § 189 [eff. Jan. 2000]); and (2) defendant knew another person involved in the murder was armed with a firearm (§ 12022, subd. (d)). The trial court sentenced defendant to prison for a determinate term of three years and an indeterminate term of 25 years to life. Defendant appealed. This court affirmed the judgment. (*People v. Clavano* (Sept. 8, 2005, E035971) [nonpub. opn.] [2005 Cal. App. Unpub. LEXIS 8154, *42] (*Clavano*).)

In 2019, defendant petitioned the trial court for resentencing on the basis that he had been convicted under a natural and probable consequence theory and, under changes to section 188, he could no longer be convicted of murder. (§ 1170.95, subd. (a).) The trial court denied defendant's petition on its merits because defendant was a major participant in the offense and acted with reckless indifference, and because Senate Bill 1437 (Sen. No. 1437), which added section 1170.95 to the Penal Code, was unconstitutional. (Sen. No. 1437 (2017-2018 Reg. Sess.) § 4.)

Defendant raises five issues on appeal. First, defendant contends the trial court erred by applying the felony murder law. Second, defendant asserts substantial evidence does not support a finding that he acted with reckless indifference. Third, defendant contends the trial court's finding of reckless indifference violated his right to a jury trial. Fourth, defendant contends the trial court erred by accepting the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

prosecutor's waiver of filing an opposition.  Fifth, defendant contends the trial court erred by finding Sen. No. 1437 unconstitutional.  We reverse.

## FACTUAL AND PROCEDURAL HISTORY

A.    DEFENDANT'S CRIME

When considering defendant's petition for resentencing, the trial court took judicial notice of documents from the trial court's file in defendant's murder case including the information, the preliminary hearing transcript, the abstract of judgment, minute orders, jury instructions, and verdict forms.  However, the trial court primarily relied on the factual recitals in this court's opinion in defendant's appeal from his murder conviction.  (*People v. Clavano* (Sept. 8, 2005, E035971) [nonpub. opn.] [2005 Cal. App. Unpub. LEXIS 8154.)  Accordingly, we will summarize the facts from our prior opinion.[2]

Defendant owned a Ford Escort.  (*Clavano*, 2005 Cal. App. Unpub. LEXIS 8154, *1, 12-13.)  Defendant's brother, Oliver Clavano (Brother), allowed James Townsend (the victim) to borrow the Escort.  (*Id.* at pp. *2, 5, 14.)  The victim failed to return the car.  Brother searched for the car and, after locating it, found the stereo and personal items were missing from it.  (*Id.* at p. *14.)  The victim had removed the car stereo and sold it.  (*Id.* at p. *15.)  Brother was angry.  He felt the victim "had 'burned' him, and if he could catch up to him he would 'beat his ass, put him in the hospital.' " (*Ibid.*)

---

[2] An unpublished case may be cited for the purpose of providing a factual background.  (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)

3

On May 17, 2001, defendant told Lucas Cardenaz that someone had stolen his car stereo and "he was going to handle it, deal with it." (*Id.* at p. *9.) That night, between 9:00 and 10:00 p.m., the victim and his friend were at the apartment of the victim's girlfriend (Girlfriend), in a front bedroom, listening to music. (*Id.* at p. *5.) Defendant and Brother lived in a nearby apartment complex. (*Id.* at p. *8.)

Also on May 17, 2001, between 9:00 and 10:00 p.m., defendant and Brother were standing by a fence near Girlfriend's apartment complex. (*Id.* at p. *8.) Brother "climbed over the fence and said, 'I'm going to go check it out and see if it's clear.' " Brother walked toward Girlfriend's apartment. He returned approximately one minute later and said to defendant, " 'It's all clear, pass me the heat. Give me the heat.' " (*Id.* at p. *8.) Defendant carried a .357 Magnum handgun for protection. (*Id.* at p. *13.) Defendant "reached under his shirt and pulled out a dark-colored bandana, wrapped around a gun" and "passed the gun under the fence to [Brother]." (*Id.* at p. 8.)

Brother again walked toward Girlfriend's apartment complex. (*Id.* at pp. *8-9.) The victim was standing by the front bedroom window. (*Id.* at p. *6.) Brother fired four or five shots. (*Id.* at p. *9.) The shots went through the front bedroom window screen and wall and struck the victim's head and chest. The head wound was fatal. (*Id.* at p. *6.) The shots were fired "from less than four feet away and probably from less than two feet away." (*Ibid.*) After hearing the shots, defendant walked toward his and Brother's apartment. (*Id.* at p. *9.)

4

B.    TRIAL

As part of his section 1170.95 petition, defendant contended his murder conviction was based upon a theory of natural and probable consequences.  In the instant appeal, defendant asserts the trial court erred by applying the law for a murder conviction that is based upon a theory of felony murder, rather than a conviction based upon a theory of natural and probable consequences.  Accordingly, we set forth the relevant jury instructions from defendant's trial.

As to first-degree murder, the jury was instructed, in relevant part, "To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill."  (CALJIC No. 8.20.)  The jury was also instructed to consider the matter of degree only if it had already found defendant guilty of murder.  (CALJIC No. 8.70.)

The jury was instructed on conspiracy.  The jury was informed that "[a] conspiracy is an agreement between two or more persons with the specific intent to agree to commit the crime of assault with a firearm or murder, and with the further specific intent to commit that crime, followed by an overt act."  (CALJIC 6.10.5.)

The jury was further instructed that "[a] member of a conspiracy is not only guilty of the particular crime that to [his] knowledge [his] confederate agreed to and did commit, but is also liable for the natural and probable consequences of any [crime] or [act] of a co-conspirator to further the object of the conspiracy, even though that [crime]

5

or [act] was not intended as part of the agreed upon objective and even though [he] was not present at the time of the commission of that [crime] or [act]." (CALJIC No. 6.11.)

The jury was informed that "[t]he object of a conspiracy may be an agreement by two persons to commit or attempt to commit an assault upon the person of another with a firearm. A firearm includes a handgun. Assault with a firearm includes each of the following elements[:] [¶] 1. A person was assaulted; and [¶] 2. The assault was committed [with a firearm]." (CALJIC No. 9.02.)

The jury was also given instructions on aiding and abetting. The jury was informed, "One who aids and abets [another] in the commission of a crime is not only guilty of [that crime], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted. [¶] In order to find the defendant . . . guilty of murder, [as charged in Count[] 1,] you must be satisfied beyond a reasonable doubt that:

"1.      The crime [or crimes] of assault with a firearm or murder [was] [were] committed;

"2.      That the defendant aided and abetted [that] [those] crime[s];

"3.      That a co-principal in that crime committed the crime of murder; and

"4.      The crime[] of murder [was] a natural and probable consequence of the commission of the crime[] of assault with a firearm." (CALJIC No. 3.02.)

The instruction further provided, "You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided

6

and abetted the commission of an identified and defined target crime and that the crime of murder was a natural and probable consequence of the commission of that target crime." (CALJIC No. 3.02.)

### C.  PETITION AND MOTION TO STRIKE

In February 2019, defendant petitioned the trial court for resentencing. Defendant asserted he was convicted of first degree murder under the natural and probable consequences doctrine, and could no longer be convicted of first degree murder due to changes to section 188. (§ 1170.95.)

The prosecutor moved to strike defendant's petition. The prosecutor asserted, "Propositions passed by [voters] cannot be amended by the Legislature unless the proposition allows it and the Legislature follows the proposition's provisions regarding amendments. . . . [Voters] passed Proposition 7 in 1978 and Proposition 115 in 1990, which established liability (including accomplice liability) and punishment for, *inter alia*, different types of murder. The Legislature . . . sought to amend provisions affected by Propositions 7 and 115 with the passage of [Sen. No.] 1437 in 2018. The Legislature did not follow the provisions of either Propositions 7 or 115 in passing [Sen. No.] 1437. As such, [Sen. No.] 1437 is unlawful and must be declared unconstitutional."

Defendant opposed the prosecutor's motion to strike. Defendant asserted, "[Sen. No. 1437] does not amend any statutory provisions passed by voter initiative."

### D.  HEARINGS

On September 20, 2019, the trial court held a hearing on defendant's petition. The trial court found defendant had made a prima facie showing that he was entitled to

resentencing. Thus, the trial court proceeded to the order to show cause as to why defendant should not be resentenced. The People waived the filing of a written opposition to the merits of defendant's petition.

The parties did not present witnesses. The parties stipulated to the trial court taking judicial notice of the facts in this court's opinion in defendant's prior appeal as well as various documents from the trial court's file from defendant's murder trial.

Defendant argued that he did not kill the victim and the prosecutor had relied on "aiding and abetting, natural and probable consequences theory" to convict defendant of first degree murder. Defendant asserted the jury did not make a finding as to whether defendant was a major participant in the murder. Defendant contended that if the trial court made that finding, then that would be error under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). Defendant asserted, "[T]he best the Court could do is grant the relief and allow this to be a second degree conviction."

The prosecutor conceded that defendant did not kill the victim. The prosecutor asserted that defendant "was clearly a major participant" based upon the victim having stolen defendant's car, defendant's statement that he would "deal with it," and defendant having provided the gun to Brother. The prosecutor further asserted that defendant's statement that he would "deal with it" combined with his possession of the gun reflected an intent to kill. The prosecutor contended the jury convicted defendant based upon a theory of aiding and abetting, so there was no *Apprendi* issue.

8

E.     RULING

The trial court concluded that Sen. No. "1437 represents an unconstitutional amendment and invalid modification of [the November 1978] Proposition 7." The trial court further concluded, "In totality, [Sen. No.] 1437 prohibits what [the June 1990] Proposition 115 authorizes by curtailing the category of individuals subject to the provisions of Pen. Code § 189, is contrary to the express intent of the voters, and represents an unconstitutional amendment to the initiative because it was not approved by two-thirds of the California Legislature."

As to the merits of defendant's petition, the trial court set forth the new law for felony murder. The trial court wrote, "The new felony murder rule established by [Sen. No.] 1437 substantially alters the traditional first degree felony-murder rule by permitting such a conviction only if the defendant commits . . . one of the designated offenses and at least one of the following circumstances is proven: [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life."

The trial court found defendant was a major participant in the murder and acted with reckless indifference to human life. The trial court did not explain which enumerated felony from section 189 constituted the underlying felony for felony murder.[3] The trial court concluded defendant was "not entitled to relief under [Sen. No.] 1437 because he was a major participant in the crime and acted with reckless

_____

[3] Assault with a firearm (§ 245, subd. (a)(2)) is not on the statutory list of underlying felonies for felony murder. (§ 189, subds. (a) & (e).)

9

indifference to human life during the course of the underlying felony." The trial court also wrote, "As equally significant, the jury in [defendant's] trial, in finding him guilty of murder also found beyond a reasonable doubt that the murder was committed willfully, deliberately, and with premeditation, and that during the commission of the murder [defendant] knew that a principal was armed with a firearm."

## DISCUSSION

### A.     RESENTENCING LAW

Defendant contends, "[T]he court [did] not conclude that [defendant] acted with the intent to kill. Rather, the court finds that [defendant] was a major participant who acted with reckless indifference for human life." The People concede the trial court erred by applying the "major participant acting with reckless indifference to human life" law in this case because this is not a felony murder case. However, the People assert reckless indifference by a major participant in a murder is effectively the same as implied malice, so the trial court's error in applying the wrong law was harmless. The People's argument fails in this first degree murder case.

"In *People v. Chiu* (2014) 59 Cal.4th 155, [our Supreme Court] held that natural and probable consequences liability cannot extend to first degree premeditated murder because punishing someone for first degree premeditated murder when that person did not actually perpetrate or intend the killing is inconsistent with 'reasonable concepts of culpability.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 838 (*Gentile*).)

10

The Legislature took the concept of *Chiu* further in passing Sen. No. 1437. Under that Legislation, the natural and probable consequences theory no longer applies to murder regardless of degree. (*Gentile*, *supra*, 10 Cal.5th at pp. 846-848.) Now, a participant in a murder who is not the actual killer can be convicted of murder if (1) the person was a direct aider and abettor in the killing who acted with malice aforethought, i.e., not natural and probable consequences aiding and abetting (*id.* at p. 850; § 188, subd. (a)(3)); or (2) the person committed an underlying felony enumerated in section 189, subdivision (a), and (A) acted "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree;" or (B) "the person was a major participant in the underlying felony and acted with reckless indifference to human life" (§ 189, subd. (e)). (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1085-1086.)

The issues of whether a defendant was a major participant in a murder and acted with reckless indifference is only relevant in a felony murder analysis. (§ 189, subd. (e).) The underlying felony that the jury was instructed on in the instant case is assault with a firearm (§ 245), which is not on the section 189, subdivision (a), list of underlying felonies. Further, the jury was not instructed on felony murder. Accordingly, as the People concede, the trial court erred by analyzing defendant's petition under the law for felony murder. (See *People v. Duke* (2020) 55 Cal.App.5th 113, 122 (*Duke*) [review granted Jan. 13, 2021, S265309] ["The court erred by treating

11

the case as one involving felony murder rather than the application of the natural and probable consequences doctrine"].)[4]

The People assert that the trial court's decision can nevertheless be affirmed because a major participant who acts with reckless indifference is effectively acting with implied malice. The problem with the People's assertion is that defendant was convicted of a willful, deliberate, and premeditated killing, i.e., first degree murder. (§ 189, subd. (a).) Assuming the People are correct that the trial court's finding equates with a finding of implied malice, such a finding would only allow for a conviction of second degree murder.

When the prosecution opposes a defendant's petition for resentencing, "the prosecution must . . . prove beyond a reasonable doubt . . . that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder." (*Duke*, *supra*, 55 Cal.App.5th at p. 123.) "Where the individual defendant personally intends to kill and acts with that intent willfully, deliberately, and with premeditation, the defendant may be liable for first degree murder for each unlawful killing proximately caused by his or her acts . . . . Where malice is implied from the defendant's conduct or where the defendant did not personally act willfully,

---

[4] In granting review in *Duke*, the Supreme Court wrote, "The issue to be briefed and argued is limited to the following: Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under Penal Code section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under Penal Code sections 188 and 189 as amended by [Sen. No.] 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?" (*Duke*, review granted Jan. 13, 2021, S265309.)

deliberately, and with premeditation, the defendant cannot be held liable for first degree murder." (*People v. Concha* (2009) 47 Cal.4th 653, 663-664.) "[M]urder committed with intent to kill is the functional equivalent of *express malice* murder." (*People v. Swain*, *supra*, 12 Cal.4th at p. 601.) Implied malice murder is second degree murder. (*Ibid.*)

At the OSC stage of the proceedings, the prosecutor bears the burden of proving beyond a reasonable doubt that the defendant is not entitled to resentencing. (§ 1170.95, subd. (d)(3).) If the trial court's finding is that defendant acted with implied malice, then that would equate with second degree murder. Thus, the People's argument regarding implied malice fails to explain how defendant is not entitled to resentencing from first degree murder to second degree murder. Accordingly, the trial court's error is not harmless.

Next, we address the portion of the trial court's ruling in which it found "equally significant" the jury's finding that the murder was willful, deliberate, and premediated. The jury's finding of premeditation does not render the trial court's error harmless. The jury was instructed, "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." The instruction continued, "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the

13

question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill." (CALJIC No. 8.20, italics added.)

The jury could have understood the instruction as permitting a first degree murder finding for defendant based solely upon Brother, i.e., "the slayer," having premeditated the murder. (*In re Loza* (2018) 27 Cal.App.5th 797, 804 ["The jury could have found that Andrade (the slayer) premeditated and deliberated, but not necessarily Loza"].) The jury was instructed to make a finding as to the degree of murder only if it had already found defendant guilty of murder. (CALJIC No. 8.70.) Thus, the jury could have used the natural and probable consequences theory for the murder verdict, and then used the slayer's, i.e., Brother's, mens rea for the first degree finding. (See *People v. Chui* (2014) 59 Cal.4th 155, 162.) Therefore, we cannot conclude that the jury found defendant premeditated the killing, such that we can rely on the jury's finding to render the trial court's error harmless.

In *Duke*, the trial court made the same error as the trial court in the instant case—it applied the new felony murder law despite *Duke* not being a felony murder case. (*Duke*, *supra*, 55 Cal.App.5th at p. 122.) In *Duke*, the appellate court found the trial court's error harmless because, in addition to finding the defendant was a major participant who acted with reckless indifference, the trial court found the defendant acted " 'with intent to kill, aided or abetted or assisted the actual killer in the commission of the offense.' " (*Ibid.*) The appellate court concluded that the evidence supported the trial court's intent to kill finding. Thus, the appellate court found the trial

14

court's error was harmless because a jury could find the defendant directly aided and abetted the murder while acting with express malice. (*Id.* at pp. 123-124.)

In the instant case, the trial court applied the incorrect law and did not make a finding of intent to kill. The trial court did find that defendant "planned and collaborated with [Brother] in perpetrating the crime," but it is not clear if the trial court was referring to murder or assault with a firearm. We will reverse in order for the trial court to determine, in the first instance (see *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 245 [trial court, as factfinder, should decide section 1170.95 petition in the first instance], whether the People met their burden of proving beyond a reasonable doubt that defendant is guilty of murder on a theory of murder valid under the amended law. (*People v. Clements* (2021) 60 Cal.App.5th 597, 614; *People v. Fortman* (2021) 64 Cal.App.5th 217, 226 see also § 188, subd. (a)(3); see also *Gentile*, *supra*, 10 Cal.5th at p. 848 [direct aider and abettor must possess malice aforethought]; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [a direct "aider and abettor must know and share the murderous intent of the actual perpetrator"].)

B.     <u>SUBSTANTIAL EVIDENCE</u>

Defendant contends substantial evidence does not support the finding that defendant acted with reckless indifference to human life. As we have explained, the reckless indifference portion of the law does not apply in this case because it is not a felony murder case. As a result, we need not analyze whether substantial evidence supports a finding of reckless indifference.

C.    *APPRENDI*

Defendant contends the trial court's factual findings that he was a major participant in the murder and acted with reckless indifference to human life violated *Apprendi*.  In *Apprendi*, the United States Supreme Court concluded that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " (*Apprendi*, *supra*, 530 U.S. at p. 476.)

We have concluded *ante* that the trial court erred in its factual findings by applying the incorrect law.  Accordingly, the issue of whether the trial court employed an improper procedure in making those findings is moot because we can offer defendant no further relief on the issue.  (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321 [" ' " '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief' " ' "].)

D.    PROSECUTOR'S WAIVER

Defendant contends the trial court erred by accepting the prosecutor's waiver of filing an opposition.  The resentencing law provides that if the trial court finds the defendant made a prima facie showing for relief then "[t]he prosecutor shall file and serve a response." (§ 1170.95, subd. (c).)  We have concluded *ante* that the trial court erred in making its factual findings.  Whether the trial court erred by employing an improper procedure in making those findings is moot because we can offer defendant no further relief.  (*People v. Gregerson*, *supra*, 202 Cal.App.4th at p. 321 [" ' " '[A] case

16

becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief' " ' "].)

E.    CONSTITUTION

Defendant contends, and the People concede, that the trial court erred by finding Sen. No. 1437 unconstitutional.  They are correct that the trial court erred.  (*People v. Johns* (2020) 50 Cal.App.5th 46, 54, 66 [Fourth Dist., Div. Two]; *People v. Lippert* (2020) 53 Cal.App.5th 304, 311-312, 314 [Fourth Dist., Div. Two]; *People v. Bascomb*, *supra*, 55 Cal.App.5th at p. 1085, fn. 2 [Fourth Dist., Div Two]; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 251 [Fourth Dist., Div. One]; *People v. Cruz* (2020) 46 Cal.App.5th 740, 759 [Fourth Dist., Div. Three]; *People v. Bucio* (2020) 48 Cal.App.5th 300, 311-312 [Second Dist., Div. Six]; *People v. Lopez* (2020) 51 Cal.App.5th 589, 594 [Second Dist., Div. Two]; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 211 [Sixth Dist.].)

F.    CONCLUSION

In sum, the trial court (1) applied the incorrect law when making its factual findings, and that error is prejudicial; and (2) erred in finding Sen. No. 1437 unconstitutional.

## DISPOSITION

The order denying defendant's petition is reversed.  The trial court is directed to again consider defendant's petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
J.


We concur:


RAMIREZ
P. J.


RAPHAEL
J.

18